UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 CR 621 |
| LEONARD CLARK, | ) ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Leonard Clark pleaded guilty to drug distribution charges in 2004 and is serving a 25-year sentence. Clark's plea to a conspiracy charge netted the 25 year sentence; he pleaded guilty to conspiracy to distribute and possess with intent to distribute mixtures containing in excess of 50 grams of cocaine base. *See* 21 U.S.C. § 841(b)(1)(A). Mr. Clark also pleaded guilty to three counts of distributing 7.2 grams, 13.7 grams, and 25.1 grams of cocaine base for which he was sentenced to 20 year terms, concurrent with the 25 year sentence on the conspiracy charge. Mr. Clark now moves [758] for a reduced sentence under the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 522 (2018), which makes retroactive the changes to the drug amounts that trigger mandatory minimum sentences provided in the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, 2372 (2010). The government opposes Mr. Clark's motion, arguing that he is not eligible for a sentence reduction under the First Step Act and, in the alternative, that the court should exercise its discretion under the Act to deny relief. As discussed below, the court concludes that Mr. Clark is eligible for relief and reduces his sentence to time served.

**BACKGROUND**

In February 2004, Mr. Clark and eight co-defendants were charged with various drug crimes arising from their involvement in the West Town Chapter of the Latin Kings street gang. (Superseding Indictment [170] at 1–2.) In Count I, Clark and his co-defendants were charged

with conspiracy to distribute more than 50 grams of cocaine base, also known as "crack cocaine." (*Id.* at 1.) The indictment identifies Mr. Clark as the first in command (or "Inca") of the West Town Chapter. (*Id.* at 2.) Mr. Clark was also charged with distributing 7.2 grams of crack cocaine (Count III), 13.7 grams of crack cocaine (Count IV), and 25.1 grams of crack cocaine (Count V.) (*Id.* at 6–8.)

In April 2004, Mr. Clark entered a "blind" plea of guilty to Counts I, III, IV, and V of the superseding indictment. (Apr. 13, 2004 Min. Order [208].) In the Presentence Investigation Report, the probation officer found Mr. Clark responsible for trafficking at least 1.5 kilograms of crack cocaine. (*See* Gov't's Resp. to Clark's Mot. [764] at 3.) Mr. Clark disputed that quantity, contending that he was directly liable for only 46 grams. (Def.'s Version of the Offense for Sentencing [253] at 3.) Judge Amy St. Eve, then of this court, adopted the probation officer's finding (*see* Gov't's Resp. to Clark's Mot. [764] at 4), determined Clark's guideline sentencing range was 360 months to life, and sentenced him to 360 months on January 28, 2005. (Sentencing Order [327].) Clark appealed, challenging the court's drug quantity finding, but the Seventh Circuit affirmed, reasoning that the district court had properly considered information obtained during the plea hearings of his co-defendants. *See United States v. Clark*, 191 Fed. App'x 491, 494 (7th Cir. 2006) (citing *United States v. Hardamon*, 188 F.3d 843, 850 (7th Cir. 1999)); and recognizing "more than enough evidence . . . that Clark and [a co-Defendant], as leaders of the conspiracy who presided over meetings about the drug trade, could have reasonably foreseen 1.5 kilograms of crack trading hands even during the short time they were involved.")

Since that time, Mr. Clark has filed three motions challenging his sentence. First, in September 2007, Mr. Clark moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds of ineffective assistance of counsel. *See* Mot. under 28 U.S.C. § 2255, *Clark v. United States*, No. 07 C 5224 (N.D. Ill. Sept. 14, 2007). The court denied the motion in November 2007. *See Clark v. United States*, No. 07 C 5224, 2007 WL 4246891 (N.D. Ill. Nov.

30, 2007). Second, Mr. Clark sought a sentence reduction under Amendment 706 to the crack cocaine guidelines in September 2011. (*See* Def.'s 18 U.S.C. § 3582(c)(2) Mot. [502].) The court denied that motion as well, noting that the amendment did not lower the guidelines range for his sentence. (Dec. 28, 2011 Order [527] at 3.) Third, in January 2015, Mr. Clark moved for a reduced sentence in light of Amendment 782 to the sentencing guidelines, which became effective in November 2014 and authorized a two-level reduction to the base offense level for drug offenses. (Def.'s Mot. for a Sentence Reduction [628] ¶ 3.) The government objected to that motion (Gov't's Opp'n to Def.'s Mot. [631] at 5), but Judge St. Eve granted it, reducing Clark's sentence to 300 months. (Order regarding Mot. for Sentence Reduction [653]).

In 2018, Congress passed the First Step Act, which made retroactive the Fair Sentencing Act of 2010's changes to the drug amounts that trigger mandatory minimum sentences. When Mr. Clark was sentenced, the guidelines range for the distribution of 50 grams or more of cocaine base was ten years to life imprisonment, and the range for distributing 5 to 50 grams was five to forty years imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii) (2002 Supp.) A defendant sentenced for amounts of 28 to 280 grams after the Fair Sentencing Act was enacted would face a range of five to forty years; there is no minimum sentence and for amounts less than 28 grams, there is a twenty-year maximum. *See* 21 U.S.C. § 841(b)(1)(B)(iii), (C). These less stringent penalties initially applied only to defendants sentenced after the 2010 Act's enactment. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012) ("[W]e conclude that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). But the 2018 First Step Act made retroactive the Fair Sentencing Act's increase in the quantity of crack necessary to trigger § 841's penalties. *See* Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Mr. Clark now moves [758] for a sentence reduction under § 404 of the First Step Act.

**DISCUSSION**

**A.     Eligibility**

The First Step Act provides, "A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  First Step Act § 404(b) (citation omitted).  Section 2 of the Fair Sentencing Act modified the amounts of crack cocaine necessary to trigger certain mandatory minimum sentences, while section 3 eliminated mandatory minimums for simple crack cocaine possession.  Pub. L. No. 111-220, § 2–3, 124 Stat. 2372, 2372 (2010).  "Covered offense" in the First Step Act is defined to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  First Step Act § 404(a).  Section 404(c) of the First Step Act precludes relief for a defendant who had previously had a First Step Act motion denied or, relevant here, "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010."  *Id.* § 404(c).  The government contends both that Mr. Clark was not sentenced for a "covered offense" and that he has already had his sentence reduced under the Fair Sentencing Act.  The court disagrees on both points.

In arguing that Mr. Clark's sentence is not for a "covered offense," the government repeats an interpretation of the First Step Act that it has submitted many times to courts in this district and that has been repeatedly rejected.  Specifically, the government insists that what matters when determining whether Mr. Clark's offense was a "covered offense" is his actual conduct as opposed to the quantity of crack cocaine charged in his indictment or the statute under which he was convicted.  (*See* Gov't's Resp. to Clark's Mot. [764] at 9.)  Hence, because at his sentencing Judge St. Eve found him responsible for trafficking 1.5 kilograms of crack cocaine, Mr. Clark's offense was unaffected by the Fair Sentencing Act's reduction in statutory penalties.  *See* 21

4

U.S.C. § 841(b)(1)(A)(iii) (280 grams or more of cocaine base are subject to a sentencing range of ten years to life imprisonment).

Although the Seventh Circuit has not yet weighed in on this issue, courts in this district have frequently held that what matters is the amount of crack cocaine charged in the indictment. *See, e.g., United States v. Jones*, No. 10 CR 985, 2019 WL 4942365, at *3 (N.D. Ill. Oct. 8, 2019); *United States v. Williams*, 402 F. Supp. 3d 442, 445 (N.D. Ill. 2019); *United States v. Cross*, 397 F. Supp. 3d 1184, 1186 (N.D. Ill. 2019); *United States v. Wright*, No. 03 CR 362-2, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019); *United States v. Johnson*, No. 01 CR 543, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019); *United States v. Booker*, No. 07 CR 843-7, 2019 WL 2544247, at *2-3 (N.D. Ill. June 20, 2019). These other courts have concluded that § 404(a)'s phrase "a violation of a Federal criminal statute" refers to what statute the defendant is charged with violating and not his actual conduct. After all, the statute concerns a "covered *offense*," not "covered conduct." *See Williams*, 402 F. Supp. 3d at 445–46; *see also Hughey v. United States*, 495 U.S. 411, 415–16 (1990) (holding that "offense" in 18 U.S.C. § 3663 refers to the "offense of conviction"). This court, like its colleagues, disagrees that the phrase "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act" modifies "violation" as opposed to "Federal criminal statute." As a court in another district explained, "Here, the 'penalties' clause is most naturally read as modifying 'Federal criminal statute,' the noun phrase immediately next to it. Indeed, Congress appears to have deliberately inserted 'Federal criminal statute' after the word 'violation' and added the word 'statutory' before the word 'penalties' to achieve this exact result." *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) (citation omitted). These repeated references to criminal statutes and statutory penalties "mak[e] clear that eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct." *Id.*

The cases the government cites to argue otherwise are inapposite, as Judge Chang explained in *Williams*, 402 F. Supp. 3d at 446. The Supreme Court in *Sedima, S.P.R.L. v. Imrex*

5

*Co.*, 473 U.S. 479, 489 (1985), did not define the term "offense." And *Sedima's* definition of "violation" as meaning "only a failure to adhere to legal requirements" was limited to the RICO statute. Likewise, *United States v. Hayes*, 555 U.S. 415, 421–426 (2009), in which the Court held that "a misdemeanor crime of violence" under 18 U.S.C. § 921(a)(3) refers to the defendant's conduct and not what he had been charged with, does not set out a categorical rule of how federal criminal statutes should be interpreted. *See Williams*, 402 F. Supp. 3d at 447 ("[The Supreme Court] certainly did not hold that terms like 'crime,' 'offense,' or even 'violation' could or should always be understood to refer only to actual conduct rather than the elements of the crime of conviction."); *see also id.* (noting that in *Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009), another case the government cites, the Supreme Court acknowledged that "offense" can sometimes refer to a generic crime and not the defendant's conduct).

Nor is the court persuaded that the consensus approach in this district contravenes congressional intent to eliminate sentencing disparities between defendants charged before and after the Fair Sentencing Act. In support of its sentence-disparity argument, the government asserts that if Mr. Clark were charged today, the indictment would charge him with trafficking 280 grams or more of crack cocaine; in 2003, prosecutors sought charges only for 50 grams because that amount triggered the most severe penalty, so there was no point in charging a larger quantity. That means, in the government's view, that if this court considers only what is charged in the indictment, Clark will benefit from having been charged back in 2003 rather than now. But as other courts have noted, this concern is mitigated by the fact that relief under the First Step Act remains discretionary. *See Williams*, 402 F. Supp. 3d at 449 ("The Act does not *require* a judge to reduce a sentence after holding that the defendant is eligible for relief. . . . Not only are judges not required to reduce the sentence, but they would naturally take evidence about the drug quantity into account in doing so."); *Wright*, 2019 WL 3231383, at *3 ("The issue before the Court is whether Wright is eligible for relief under the First Step Act, not whether his eligibility differs from other defendants. The Court will not disregard Wright's eligibility based on an argument that

6

other defendants might be subject to longer statutory minimum sentences."). The court is also concerned that government's approach would require speculation about what would have happened had the Fair Sentencing Act been in effect, which the court declines to do. *See Wright*, 2019 WL 3231383, at *3 (quoting *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019)) ("[A]n approach that focuses on the particulars of the record to determine how the specific defendant committed his or her offense of conviction and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime 'effectively requires the Court to employ a prosecutor-friendly "way-back machine," to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect.'").

Finally, the government is also incorrect in suggesting that Mr. Clark's sentence has previously been reduced under section 2 or 3 the Fair Sentencing Act. *See* First Step Act § 404(c). Mr. Clark's sentence was reduced from 360 to 300 months under Amendment 782, but that amendment was not made pursuant to those sections of Fair Sentencing Act. *See United States v. Young*, 2019 WL 6918279, at *2 (N.D. Ill. Dec. 19, 2019) (rejecting the government's argument that Amendment 782 was promulgated under section 2 or 3 of the Fair Sentencing Act). Unlike Amendment 750, which changed the crack cocaine mandatory minimums and was adopted in response to the Fair Sentencing Act, *see United States v. Curb*, No. 06 CR 324-31, 2019 WL 2017184, at *2 (N.D. Ill. May 7, 2019), "Amendment 782 reduced by two levels the base offense levels for a large group of drug offenses—not merely crack offenses—and the Commission's stated reason for adopting the amendment was that it no longer viewed the higher penalties as necessary to achieve penological goals," *United States v. Span*, No. 03 CR 71-3, 2020 WL 549631, at *6 (N.D. Ill. Feb. 4, 2020). The court therefore finds that Mr. Clark is eligible for relief under the First Step Act.

**B.     Discretion to Reduce Sentence**

Having found that Mr. Clark is eligible for a sentence reduction under § 404 of the First Step Act, the court turns to whether it should exercise its discretion to reduce his sentence. Clark has been in custody since June 27, 2003, meaning that he has already served almost seventeen years, which is about two-thirds of his 300-month sentence. (Clark's Mot. for Reduced Sentence [758] at 7.) Based on the good time credits he has accrued, Mr. Clark is scheduled to be released in January 2026, according to BOP.gov. To determine whether it should exercise its discretion to set an earlier release date, the court looks to the sentencing factors provided in 18 U.S.C. § 3553(a). *See United States v. Mansoori*, No. 97 CR 63-9, 2019 WL 6700166, at *5 (N.D. Ill. Dec. 9, 2019); *see also Rose*, 379 F. Supp. 3d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.").

"Evidence of post-sentencing rehabilitation 'may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.'" *Mansoori*, 2019 WL 6700166, at *5 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). Mr. Clark has engaged in numerous post-sentencing activities aimed at self-improvement. For example, not only has he completed a large number of educational and practical training courses (*see* Ex. 1 to Clark's Mot. for Sentence Reduction [628-1]), he has also been asked to teach fellow inmates in classes on diverse topics ranging from Confronting Addictions to Latin American History (Clark's Reply to Gov't's Resp. [766]). Significantly, in a letter to the court, Mr. Clark reports that he has jobs lined up for him through friends and family when he is released. (*See* Letter from Leonard Clark to Judge Pallmeyer (July 20, 2019), Ex. 1 to Clark's Reply to Gov't's Resp., [766-1] at 1.) The court notes that in his letter, Mr. Clark takes responsibility and expresses contrition for his past crimes. (*Id.* at 1–2.)

Mr. Clark's current medical condition further supports granting him the relief that he seeks. *See* 18 U.S.C. § 3553(a)(2)(C) (instructing courts to the consider the need "to protect the public

8

from further crimes of the defendant" when imposing a sentence). He suffered a crushed windpipe many years ago, leaving him with a tube in his trachea, which is difficult to clean to avoid infection and interferes with his breathing and speech. (Clark's Mot. for Reduced Sentence [758] at 8.) He has been unable to get a needed surgery while in prison. (*Id.*)

As noted, Mr. Clark has already served almost seventeen years in custody, a substantial chunk of his adult life. The court sees no obvious basis for a conclusion that additional time in prison would further deter him—or anyone else—from committing additional crimes. *See* 18 U.S.C. § 3553(a)(2)(B) (instructing courts to the consider the need "to afford adequate deterrence to criminal conduct" when imposing a sentence). Mr. Clark is also now forty-five years old, a father to two adult children, a grandfather, and engaged to be married. (Letter from Leonard Clark to Judge Pallmeyer at 1.) Those family connections, together with his prospects for employment, bolster the court's expectation that he is capable of leading a law-abiding life upon release.

The government urges that the court should refrain from giving him any relief in light of the drug quantities he was involved with. But the government's argument basically repeats the sentencing disparity argument rejected above—that is, that reducing his sentence would be a "windfall" because, were he charged today, he would be indicted for a greater amount of crack cocaine. In essence, the government asks the court to keep Mr. Clark in prison based on a hypothetical. *See Mansoori*, 2019 WL 6700166, at *5 ("The Court will not assume that any defendant could have been indicted on a greater drug quantity."). True, consistent sentencing for similarly situated offenders is important, *see Dorsey*, 567 U.S. at 277–79 (noting concerns about "creating new anomalies—new sets of disproportionate sentences—not previously present" when applying new sentencing rules), but such concerns are outweighed by Mr. Clark's positive post-sentencing record. Notably, the government makes no argument about his post-sentencing record or that he is otherwise undeserving of a reduced sentence. Nor has it explained why keeping Mr. Clark in prison until 2026 will do more to "promote respect for the law" and "provide

just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), than the seventeen years he has already served has not accomplished.

## CONCLUSION

For the foregoing reasons, Defendant Leonard Clark's motion [758] under § 404(b) of the First Step Act is granted. The court orders that his sentence be reduced to time served, and that he be released from custody forthwith. The court leaves intact Clark's five-year period of supervised release.

ENTER:

Date: April 15, 2020

_____
REBECCA R. PALLMEYER
United States District Judge